Good afternoon, your honors. May it please the court. Angelica Gonzalez, certified law student under the supervision of attorney Andrew Knapp for the petitioner Yen Yin with Southwestern Law School's Appellate Litigation Clinic. We would like to reserve two minutes for rebuttal. I will be addressing adverse credibility while my colleague Mr. Carlos Suarez Hernandez will be addressing why this should be remanded. The record compels the conclusion that the adverse credibility determination is not supportable because none of the reasons the BIA relied upon were legitimate. Can I ask you to focus on something here? This is a little bit of an unusual adverse credibility case because normally we're arguing about whether the facts can be shown by the record. In this case, as I understand it, you don't contest any of the underlying facts found by the IJ. You contest the conclusion that the IJ drew from those facts that your client wasn't credible. For example, you don't contest that the uncle's declaration doesn't mention certain things. You don't contest that Jin got a passport at some point in time, a renewed passport. Tell me why those facts are insufficient to support an adverse credibility determination. Yes, Your Honor. We believe that the immigration judge and the Board of Immigration Appeals relied on speculation and conjecture when determining whether Ms. Jin should have an adverse credibility determination or not. The first reasoning was that the Board of Immigration Appeals relied on the fact that Ms. Jin took this trip with this pastor and wouldn't advise her aunt and uncle. However, we do believe that this trip is something in common sense that she would take as a devouted Christian who attended church weekly as well as was baptized just a year before. Can I ask you about that? Part of what you rely on is the cultural differences. There seems to be this acknowledgement that in the United States, maybe this wouldn't happen, but in China, kids have more freedom and they would do it. Is that what the argument is, or do you just say, no, this is a normal thing that would happen anywhere? That is a part of our argument, Your Honor. We do believe that the immigration judge relied on a westernized view of what a 17-year-old may do. If it was a westernized view, do you think it makes sense? My experience is that 17-year-olds, even those who are well-behaved generally, often do not tell their parents or guardians when they're about to do something they shouldn't do. So let's just take out the westernized part of it. On its facts, is it a reasonable assumption that if a 17-year-old was going to do something that maybe she shouldn't have done, she would have told her guardian or parents about it? We think it's reasonable that she would have just taken this trip. She was two weeks shy of her 18th birthday. We don't have to find it reasonable that she would take the trip. That's a separate question. He found her not credible because she says, I didn't tell my guardians. So I'm not sure why you need to suggest that it's reasonable to undertake this. It may whether or not a normal 17-year-old anywhere in the world, or at least in the United States, if we're going to use westernized experience, would normally tell their parents that they're going to go do something that might be dangerous. You were a 17-year-old recently. What's your experience with that? Yes. Well, we definitely certainly believe that it's plausible that she would just go and take this trip, especially since she was two weeks shy of her 18th birthday. We also believe that she was with a legal guardian, if that's what the Board of Immigration Appeals was concerned with, suggesting that this was the pastor that she went with, a religious leader who she follows and would want to continue to follow. I think it's not just whether the 17-year-old would go do this, but the IJ also relied, I think, on the fact that the pastor wouldn't have allowed a 17-year-old to go on such a dangerous journey. You know, it's not clear exactly what she knew at 17. She's, oh, we're going to go pick somebody up, let's go. But the pastor seemed to know how dangerous this was. In fact, it turned out to be quite dangerous, at least if the story is to be believed. What's the response to that, that a responsible adult who knows that he has a religious oversight, is someone who she looks up to, wouldn't have agreed to take her? What's the response to that? Well, we do believe that the pastor, as cited in the record by Mission, that he was living in the home with them and staying with them, so it's reasonable and plausible that he would just take her. She did cite in her testimony that she saw him receive the call and that he chose to just take her. Because of their religious belief, we believe that they did this together, as something like the Tibetans did, and we cited in our record with the country conditions report, that there was a 17-year-old who also took a trip on this and was even more dangerous, that she actually lost her life. So we believe that it is plausible for people who are this religious belief system to take imprudent risks. So here's, help me understand where the line is, because we've got cases that say, this is an unusual substantial evidence determination, because there's not anything in the record that shows that she lied about this or whatever. But where do we draw the line between the speculation and an adverse inference that we normally credit an IJ who's there in the room, here's the whole story, where do we draw the line? Yes, your honor. So I think it's interesting that the IJ did note that there was nothing in the demeanor of Ms. Jin that would determine that she wasn't credible. So I think with that, it shows that she was a credible person and that she believed in this Christianity faith and continuously was attending church even when she came to the state. Do you think this would be different if he'd said, look, she was fidgeting, she was looking down, I observed these other things. You would say that in and of itself could support a substantial evidence, but here that didn't happen. It was just based solely on the story itself. Correct. And there were no inconsistencies that were- Where's the limit? If she said, oh, we had to climb a 10,000 foot mountain and I went up by hand and I had no climbing experience, would he then say, okay, that's incredible. But this doesn't rise to that level. Where do we draw the line between what's credible and incredible in a circumstance like this? Yeah. I do believe that there was some, these were plausible explanations for her. And I do believe that there were other things- Maybe, but there's always these situations that are plausible. I mean, if Judge Hurwitz or I were the IJ, maybe we would have come out differently, but that's not the test. The question is, is there substantial evidence here to support it? And that's what I'm struggling with, is where do I draw the line to say, the IJ erred here because he said it was incredible and it wasn't. I can think of a theory. Is that all I have to do is think of a theory where it's plausible and you win on this? Well, I do believe that we are requesting for it to be remanded, but with that, my time is out. So I would like- You've actually got lots of time. You're just one of the lessons you might learn today, which is that splitting time is never a good idea. So please answer his question. I'm sorry, could you repeat the question? So the question was, what is our role here? Do we have to just come up with any plausible theory to defend this? Or do we say, standing in our own shoes, we think this is different? What deference do we owe to the IJ in this case? Yes, sir. It's my understanding that you are to review the substantial evidence and see whether you can uphold as well the Board of Immigration Appeals. So I believe that- Well, but we do say all the time in these cases that an IJ is entitled to apply common sense. You don't have to have something in the record when applying common sense. So Judge Nelson's hypothetical, she said, I climbed a 10,000-foot mountain. Somebody could apply common sense and say, that's a very hard thing to do and you didn't have any experience. What I'm trying to figure out from this record is, what is there that tells us that somebody would have known this was a dangerous thing or a forbidden thing or something that might allow a judge to apply common sense to it? Or are we just looking at a record that doesn't answer that for us? Yeah. So I believe that would be looking at the country conditions reports that were cited in our replacement opening brief, as well as the common sense argument. I would suggest that with- Well, how do the country condition reports help you? The country reports show that religious individuals may take imprudent risks in pursuing and in furtherance of their a risk as well in her life. And then to the common sense argument, I do believe that Gibral V. Gonzalez cites that individuals in Board of Immigration Appeals and IJs should be looking at how this female, our client, would look at the world. Okay. Well, why don't we give your next speaker a moment? Good afternoon, Your Honors. Carlos Suarez-Hernandez, a Southwestern Law student under the supervision of Attorney Andrew Knapp. And even if one or more of the factors relied upon by the immigration judge for their adverse credibility determination is unsupportable, if the court finds that the other factors are not supportable by substantial evidence and the court doubts as to whether the agency would still find Ms. Yin's testimony credible with those remaining factors, then under Elam, this case should be remanded. So, okay. Elam did go through and jettison our single factor test, which would have made this because here you have four bases that the BIA upheld the IJ's decision on. If we find that one or two of them are lacking, I don't think it requires or doesn't mandate a remand. Are you suggesting that Elam says if we find three of the four are only supportable that we have to remand? No, Your Honor. Yes, Elam says that you have to take into account the subtlety of the circumstances. And what we're saying is if the factors that were relied upon essentially got the decision of the immigration judge, then in that case, it should be remanded. Well, but help me. So, as Judge Nelson said, I think there's four and maybe you could combine one of them into two of them into a single one and make them three. So, if we find, for example, that the really didn't support the credibility determination, but all the rest of them were supported by the evidence, would we then be required to remand? That doesn't seem like it's such a central finding to what he did. So, I'm trying to figure out which ones you think are so important that the absence of them requires a remand. Yes, there was, I believe, five factors that were relied upon and the two that I believe are the strongest that were relied based on speculation and conjecture were the ones about the travel mission of Ms. Yin traveling with the pastor that we find that it was plausible that... So, it goes out. Assume that it's not supported. Okay. And that's the only one that's not supported just for the moment. Is that enough for us to remand? And if so, why? And if not, what other one do you have to add to it to get you past the line? Another one that we would refer to would also be that the immigration judge relied on impermissible speculation regarding the sequence of events surrounding the police summons and the bail receipt that made them implausible. And this conclusion is impermissible speculation for two reasons. Can I ask you about that one? Not to deter from, because I think this is also an interesting discussion, but the bail receipt, why wasn't the bail receipt? That seems to be pretty key. And why wasn't that presented in the application? So, the issue about that is that she was never asked exactly... Ms. Yin was never asked when she exactly received those documents, although the immigration judge... But you're never asked in the application, are you? I mean, you apply for asylum and you say, here's everything that supports it. Yeah, but... It seems to be like the key thing that would support it. So, why wasn't that put forward at the time? And yes, Your Honor. And about that, it's like we're not sure if she had them at the time. Did she have it at the time? Is there any evidence in the record? There is no whether her uncle sent it to her. She did answer that they were sent to her, but it does not state when she actually received those documents. So, it's unclear whether she had them during that initial... How did they get in the record in this case? So, after the case was moved to the immigration court, Ms. Yin submitted them before her merits hearing. And the judge found this document so essential to her claim that she continued the case multiple... Well, continued the case to make sure that the translations were correct. That's what I'm trying to figure out. They were put before the IJ? Yes. Before the hearing began? Before the merits hearing, yes. They weren't put before the USCIS in the... They were not because she never reached an asylum interview with them. Okay. So, the IJ's finding that their absence was significant was based on the IJ's feeling that they should have been brought out at the very beginning of the hearing. Not that they should have been brought out too late in the IJ process, but that they should have been brought out even before that began. Exactly. The immigration judge is relying on the fact that saying, oh, she should have submitted it with her initial application, but never inquired as to when she actually received them and never asked her why they were not submitted with the initial application. But there was another reason, I think, that the IJ relied on, which was that she felt like there was some incomplete information in the summons report. Am I wrong about that? Yes. She asked about why there was no payer or accountant or receiver information in the document. The thing is that she missed an answer that she did not know because it was her uncle that got these documents. So, she responded that she did not know because of her uncle and... Well, that presents a problem in and of itself because, I mean, she didn't have the document. She didn't know anything about... She couldn't verify that these were original. Who knows where they came from? Why isn't that grounds to say that the IJs... I mean, I don't know looking at these documents whether they're accurate or not, but the IJ had enough questions to say she didn't think they were. So, what basis do we have to say that was completely not a good reason to discount this? Well, under SOTOLARTE, the immigration found that it was implausible that she did not submit these documents with the initial asylum application, but she never provided Ms. Yen the opportunity to explain this, I guess, alleged inconsistency between the documents when they were filed and when she received them. And this is a reversible error because the IJ relied on this inconsistency for an adverse credibility determination without actually giving Ms. Yen the opportunity to explain that inconsistency before relying on it for an... How could she have explained the inconsistency? I thought she did explain... Sorry, go back. What inconsistency are you pointing to? Well, I'm saying that the immigration judge was saying that it should have been submitted with the initial asylum filing. And then we're saying that she was never asked when she actually had the document. So, now the immigration judge relied on this kind of like, why wasn't it filed? So, you're saying she never had the... I mean, did the IJ express the view that at the hearing that... I mean, did she just say, hey, I find this suspicious? Or did that not come up until the actual ruling was issued? Until the actual ruling was issued. It was just asked, but then it was never followed up with, like, okay, when did you receive it? When did you... Hold on. It was asked. Sorry. But it was asked at the hearing, saying why wasn't this presented before? No. It was asked whether she had... If her uncle had sent them and why some of the information was missing. But it was never asked why she didn't submit it and also when she actually received them. And because the immigration judge based her adverse credibility on this similar inconsistency, that was an error without giving her an opportunity to explain that inconsistency. Before you sit down, I have one question that neither of... Nobody on your side has addressed yet. The IJ also said, if I found her credible, I would still deny asylum and withholding because I don't find that what she suffered rose to the level of persecution. What she claims to have suffered rose to the level. The BIA didn't address that issue, so we can't. But if you prevail on your adverse credibility arguments, you're arguing for a remand. The remand should be to the BIA so they could address that other issue in the first instance, right? Would be, yes. Remand to the BIA. Right. Not to the IJ. No. Because the BIA could say, okay, even if she's credible, we uphold the IJ's non-persecution finding. You'll have an opportunity to argue about that to the BIA. I'm just trying to figure out what remedy you're seeking. Yes. So if I may, I know I'm out of time, but if I may answer the question, yes, we are seeking for it to be remanded to the BIA. But if the BIA is like, well, you find Ms. Yang credible, remand to the BIA. But if the BIA is insistent on finding her, as I'm claiming, not sufficient to meet the merits of the claim, then we would request that it potentially be reversed to the immigration judge in order for her to corroborate this claim because she was- Well, but that's an argument you'll have to make to the BIA, not to us. Yes. All you want from us is to send it to the BIA. To the BIA to remand, yes. To be assessed on the merits and find her credible. Okay. Thank you. We'll give you a minute for rebuttal. We'll hear from the government. Good afternoon, your honors. May it please the court, Roberta Roberts for the United States Attorney General. The court should deny the petition for review because substantial evidence does not compel reversal of the agency's adverse credibility findings. We don't have to find that it compels it. We just have to find that there's not substantial evidence to support it. It's really a separate test. We don't have to find that substantial evidence compels the conclusion that she is credible. The question for us is whether the credibility determination is based on substantial evidence. I know you say this in your brief, too, but I think our inquiry is a little bit more limited than the one you suggest. I don't know who's telling the truth here. I don't think the IJ did, though, either. We don't have to find that it compels a conclusion one way or the other. We just have to conclude whether or not there's enough evidence in the record to support the IJ's conclusion. Correct? Yes, Your Honor. That is correct. In terms of whether reversal of the decision is compelled, that goes to determining if this court decided that substantial evidence did not support the adverse credibility determination. So can we jump in on that? And I mean, I guess we're going to take these four seriatim. I'll tell you, a couple of them I'm a little bit concerned about. Jin's decision to withdraw her asylum application from USCIS and proceed to the immigration court. I'm not entirely clear why that is a basis. Is there something I'm missing? Because I think we reviewed that on the record. It wasn't, again, it wasn't like there was some additional information that the IJ was observing to say, oh, you were suspicious here. The IJ just looked at this and said, I don't believe that you had a good basis for doing that, I guess. So help me understand why that is evidence that could support an adverse credibility finding. Yes, Your Honor. Well, specifically, the IJ provided Ms. Jin the opportunity to explain why she withdrew her application from USCIS. And I thought she said, on the advice of counsel, because it was taking too long and I didn't have a hearing after a year. And then the IJ said, you know, we see this all the time. And so maybe it's bad legal advice, but why does it suggest that she didn't, she withdrew it and immediately reasserted it in the removal proceedings? So why does it suggest that she wasn't telling the truth about her persecution claims? Your Honor, the explanation that Ms. Jin provided was that she wanted to hurry and attend university. And she says that AR 149, that she was anxious to attend college. Yeah, but she also said she was advised to by counsel. And counsel's name is actually in the record here. So why does that make her not credible? I mean, she had two places where she might have asserted this. One is in front of USCIS, which I think without taking judicial knowledge, I can tell you everything in USCIS takes forever. And the other was in a removal proceeding, which sometimes moves along pretty quickly, and she would have an opportunity to be in front of a judge to assert it. So I don't understand why choosing the second forum rather than the first casts any doubt on her credibility. And we're both trying to figure out whether there's some inside baseball here that we don't know about. That, you know, the USCIS always grants these and it's easy and it's quick and you gave yourself much more of a delay. So why does it cast any doubt on her credibility? It casts doubt on her credibility, your honor, because the explanation that she initially provided when asked was that she was in a hurry to attend university. She did not explain why. Wasn't that true? I guess I'm confused. I thought she did go on a student visa to the US. Yes, your honor. That was for high school to attend a high school for international students. And then she stopped attending after three months because she stated that her English was so poor that she could not understand what was going on. But she did go and that happened after this incident. No, it happened before. She came to the US on the student visa. And then went back? No. She studied for three months at the international high school and then she stopped attending. That is when she... And she had a student visa. And so in order to stay in the US, she had to be studying somewhere. And she said, I wanted to get right into a university program so that I would presumably still be satisfying the obligations of my student visa. I must say, this isn't your strongest one. Well, I don't think you have to win this one. I mean, that's the question, right? I mean, so you're not going to confess error. Fair enough. I mean, the next one though is the Chinese police summons and bail. Help me understand. That one's a little more confusing to me because on the one hand, I understand it. It's like, why wasn't this brought up earlier? But the claim is, well, no one ever asked her. The IJ didn't ask her, when did you receive it? That would have seemingly been an acceptable answer, which is I didn't have it at the time. And if she wasn't given the opportunity to say that, we don't... I mean, is there any evidence in the record about when she got it? Is there evidence that she received it before she filed her application? It's not clear, Your Honor. She stated that her uncle had the bail summons and receipts. So one can presume that it was available at the time that she filed her application because... Filed the application with USCIS. Correct, Your Honor. But when the removal proceedings begin, this stuff is made available from the beginning of the removal proceedings, is it not? Because there's a bunch of continuances to get translations and things like that. So I'm still having trouble. Let's assume that she should have produced it earlier at USCIS, but that she produced it promptly once in removal proceedings. Why does it cast doubt on her credibility? I mean, there doesn't seem to be any contest that she had to get it from her uncle. So I think what the IJ seems to be saying, you should have known you had to get it from your uncle when you were in front of USCIS, and you didn't realize you had to get it from your uncle until later, and therefore you're not credible. But they're there in front of him, or the IJ, for the entire time of the proceedings. So why does that cast any doubt on her credibility? Put aside what the documents say for a second. I want to get to that next. But I'm not sure why the delay in producing them, there was no delay at all in the removal proceedings in producing them, cast doubt on her credibility. Your Honor, in reviewing this in the totality of the circumstances, this is, and relevant factors, this is a relevant factor. I'm not sure why. Here I'm imagining a removal proceeding where somebody comes in and says, I was detained by the police in China. And the IJ says, I'd like some corroborating evidence for that. And I'm going to give you a continuance to get it. And the person gets it and brings it in. You wouldn't say your delay in bringing it in cast doubt on your credibility. This one, the petitioner shows up with the corroborating evidence at the beginning of the proceeding. So I don't, we see this all the time. IJs ask for corroborating evidence. It's brought in and they analyze it on its face, but they don't say, oh, you didn't have it when the case started. So I'm not going to consider it as credible evidence. Your Honor, the immigration judge did not base the adverse credibility determination solely on the summons and bail receipt. This is just one of the factors. I understand. I must say the first one you gave me is not very convincing. I don't find this one very convincing either. But so you can't keep saying totality of the circumstances and not look at each of the circumstances individually. So now we're through two of them. What are you saying? When you say totality of the circumstances, are you saying all four of them? Or are you saying the totality of the circumstances regarding this specific one? Because it does seem like the police summons, there's really kind of two issues here. One is, why didn't you present it first? And then the second is, well, I find the documents themselves a bit, you know, to be missing some information or something like that. Is that what you're referencing when you're talking about totality of the circumstances? Referencing all of the factors cumulatively and weighing them in addition to each other. Yes, we are looking at each of the factors individually, but the board even noted itself that perhaps individually one of these factors may not be enough to sustain a finding, but taken together, they are. Well, yeah, I guess I'd like you to try to get to the ones you think are the strongest. And then we've led you maybe down the path by asking you about the ones that may be the weakest. So what's the strongest factor in your view? One of the strongest, Your Honor, is the suspicious timing of Ms. Jin receiving her passport. Okay, good. Thank you for it. Because I'm having sort of the same problem. She says, I renewed my passport. And she renews it, I don't know, a month before this incident is supposed to have occurred? Yes, Your Honor. Why is that timing suspicious? I mean, everybody who wants to come to the United States has to have a passport, or at least some evidence of what country they're from. So why is it just that she renewed her passport a month before this incident, although well before she came to the United States, right? It was a month before she was allegedly arrested. Right. And how long before she came to the United States? About four months after she was arrested, she came to the United States. She obtained a visa. So at least in relationship to coming to the United States, which is what this proceeding is about, she renewed her passport four and a half months or five months before she came to the United States. But is it more probable or not that someone who did that was not persecuted in the interim? The one of the main... Just sort of 401 relevance. Why is this fact relevant to the finding of whether she was persecuted? Well, Your Honor, for adverse credibility determinations, it does not have to go solely to the heart of... No, it has to go to something. So tell me... I'm a juror. You're making your final argument. So tell me why the fact that she renewed her passport a month before this incident and four and a half months before she came to the United States has any relevance at all to her credibility. Because, Your Honor, the explanation that she was provided when specifically asked why did she renew her passport, she said for no particular reason. She said it ran out. I didn't have any particular reason. I thought I might want to travel in the future. So that's the explanation. Why does that make her seem not credible? I must say I renewed my passport this year because it ran out. I don't have any particular travel plans. But does that make... Does it make it more likely that I have travel plans or that I had... I'm just... That one, I'm just mystified about what the linkage is. So tell me what the linkage is to her credibility. She says, no good reason. It just ran out and I wanted to renew it. I wanted to travel someday. Why does that make it more or less likely that she's telling the truth about anything? She did not say that she wanted to travel and that was why she renewed her passport. She did not say that she renewed it. Also, there are multiple instances where the explanations that she provides are insufficient. This is why all of these cases... Why is it insufficient to ask why you renewed your passport to say that it ran out? Why? What more explanation is needed from someone? That could... That is the explanation that she provided. It could be a plausible explanation. However, under the substantial evidence standard, even if there are alternative plausible explanations, if the record evidence, substantial evidence, supports the adverse credibility determination... Well, but it has to support the inference. And this is what... We're struggling on both edges of this continuum. I mean, if he said, gee, you said your eyes were brown in your you wouldn't say that supported an adverse credibility determination, would you? Not by itself. Well, not at all. I don't know how it gets better. Either it gets better because you've added it to good stuff or it's not good enough. So now we've taken it down to the last half minute. But the thing that I think we're both most interested in asking questions about is the conclusion that she probably wasn't telling the truth because had she done all this, she would have told her guardian. And so would you address that for us? Sure, Your Honor. The argument relying on cultural differences is unexhausted before this court. That argument was not made before the immigration judge or the board. So the court should not consider that in its determination today. But what about just the general... This is implausible that a 17-year-old would go do this or that a pastor would ask a 17-year-old. Your Honor, I see my time is... Yeah, please answer it, though. This is important. Yes, Your Honor. So this court has said in Lillian the definition of inherent plausibility is that in the context of adverse credibility determinations, inherent plausibility refers to the inherent believability of testimony in background evidence. In light of the evidence here, we have Ms. Jin saying that she would have been allowed to go with this pastor because the pastor was trusted, because the pastor was staying at the house with her. However, the uncle's letter omits any reference to allowing the pastor to have stayed in the house, which undercuts her claim and her credibility. Well, you've got two separate issues there, if you will. One is the omission from the uncle's letter. And we've got a lot of case law that says the single omission of a fact doesn't make a declaration not credible. But I want to go back to the question Judge Nelson and I've been trying to ask all along, and I'm not sure we've gotten a good response from anybody on it. Is it just as a matter of common sense, can I really conclude that not telling my mother that I'm about to go do something that she might tell me not to do is evidence that I didn't do it? That would have been a great excuse for me in high school, I must say. All kinds of things I shouldn't do and never told my parents about them, and then got caught and they said, why did you do them? But I just, I'm having trouble making the logical leap from you didn't tell your guardian, and she says, you know, one was in the that a 17 year old would tell her guardian that she was about to do this thing that turned out to be quite dangerous because she got arrested for it. Yes, Your Honor, that is part of the reason why, because of the inherent dangerousness of it. It's not just simply taking a car for a joy ride down the street. It is going to the Chinese border to pick up North Korean defectors. What in this For example, even attending house churches, knowing it's dangerous to do that because it's possible to be arrested. It's well known that it's possible to be arrested for assisting North Korean defectors in China. How is it well known? Does the record tell me that? Your Honor, in the immigration judge's decision, she does cite to a place in the record relating to North Korean defectors and China about how there are said there are there are South Korean pastors who who aid these people to come into China. I understand that's in the record, but what's in the record about the dangers of doing so? That that is what I am referring to something separate. If court's indulgence, I can. Yeah, no, we can. I can look at the record. If you tell me there's something in the record, I'll I'll look to see if there is. I didn't at least my review the record. It seems to me it's dangerous to do anything in China, so it seems to me this would be very dangerous to do, but I'm just not sure I saw anything in the record that established that. And if you could say there is, I'll look for it. Okay. I think you're out of time, so thank you. Yes, Your Honor. We'll go ahead and hear a one-minute rebuttal. Thank you, Your Honors. As for the passport issue factor, Ms. Yin discovered that she had lost her passport, reported it lost, and then replaced it. That's all her testimony, though, right? Yes. Nothing in the record other than her testimony to establish that. That, yeah, in the record it states in that she replaced it after it was being lost. Yeah, her passport's in the record, and we know when it was issued, but there's nothing in the record that tells us that she actually lost the prior one or why she did it other than her testimony. Other than her testimony. And as far as the withdrawal of her asylum application, she did say that her intent was to attend university, and although she may not have been the best student, it doesn't suggest that she would not still have that desire to attend university. And for her reason to withdrawing that application, she just wanted to speed up the process of getting her case adjudicated. And it seems like I'm out of time, so thank you. Thank you. Thank you to both counsel for your presentations. Thank you especially to our pro bono students who have stepped in, and we will look forward to welcoming you into the community of attorneys. You've put a very good foot forward in an important and complicated case. And thank you for making the trip out from D.C., so it was very helpful. Thank you. We'll move on to, the case is now submitted, and we'll move on to our second case set for argument, United States v. Olivas, case numbers 20-50182 and 21-50270.
judges: KLEINFELD, HURWITZ, NELSON